Williams, J.
By section 6343, of the Revised Statutes, it is declared that: “All assignments in trust to a trustee or trustees, made in contemplation of insolvency, with the intent to prefer one or more creditors, shall inure to the equal benefit of all *387 creditors, in proportion to the amount of their respective claims; and the trust arising under the same ' shall be administered in conformity with the provisions of this chapter. ’ ’
That the transfer, by Young & Miller, of their property, was made when they were insolvent, in contemplation of insolvency, and with the intent to prefer some of their creditors, is admitted by the pleadings, and established by the finding of facts; and the only question in the case is, whether the property, in the hands of those to whom it was transferred, was impressed with a trust. The statute does not make it essential to the establishment of the trust that it be expressed in the instrument of assignment. It is sufficient if it arise out of the agreement of the parties, or appear from the nature of the transaction. It is shown by the facts found, that when Young & Miller made the transfer of their property to Potts, Eck and Hughes, one of the creditors for whose claim it was designed to provide, and thus give it preference, was an incorporated company, called “The J. E. Potts Salt & Lumber Company,” of which Mr. Potts was a director, with authority to represent it in the transaction; and, that by the ag’reement for the transfer, and as part of the consideration therefor, the claim of the company, as well as those held by Eck, and by Hughes against Young & Miller, were to be canceled. The real estate was conveyed directly to Potts, Eck and Hughes, and written assignments of „the personal property were executed to them. They took immediate possession of all the property, and at the same time entered into an agreement between themselves to dispose of it, and apply the proceeds, first to the payment in full of “the in *388 debtedness of Young & Miller to Eck and Hughes,” and pay the remainder to John E. Potts as agent and general manager of the Salt and Lumber company. The indebtedness of Young & Miller to the company was evidenced by their promissory notes, which at the time of the transfer of the property were outstanding in the hands of parties to whom they had been assigned, but were afterward taken up, and are still held by the company. They do not appear to have been canceled, or surrendered to Young & Miller. Upon this state of facts, it seems clear that a trust was raised in behalf of the company, which it could, by appropriate action, enforce against the property, and those to whom it was transferred. It is a familiar rule, that an agent who acquires property with the means of his principal, or for a consideration moving from the principal, and takes the title in his own name, holds it in trust for the principal; and, in general, when property is purchased in the name of one person, and the consideration, or an aliquot part thereof, is paid by another, a trust in the property results in favor of the latter. In so far as the title to the R property, real and personal, transferred by Youing & Miller, was vested in Potts, he was undoubtedly a trustee for the corporation he represented, and which furnished a definitely ascertained part of the consideration; and certainly he is none the less a trustee because the title was taken in his name and the names of two others with the consent of the company. The relation of Potts, ahd of the corporation to the transaction, is fully shown by the arrangement to which those others were parties. The real estate was conveyed to the three persons, Potts, Eck and Hughes, as tenants in *389 common, and the personal property transferred to them jointly. They each, thus became seized of the whole and every part of the property, and it was so held by them charged with the trust in favor of the Salt and Lumber company; so that, they all became trustees for the company, and could be compelled by it to make a proper application of the property to the company’s claim, or account for the proceeds, and their administration of the trust, if the transfer did not fall within the operation of section 6343, which requires the trust to be administered for the equal benefit of all the creditors, in accordance with the provisions of the statute governing the administration of assignments of insolvent debtors. The trust relation to the company, of the defendants who received the property, is recognized by the agreement they entered into at the time the property was transferred to them, to the effect that they would dispose of it, and apply part of the proceeds to the indebtedness of Young & Miller to the company. Being thus trustees for the creditor, they were trustees of the debtors who chose to invest them with the title to the property for the benefit of the creditor; and being trustees for one creditor, the statute makes them trustees for all, and requires the trust to be administered for the benefit of all, notwithstanding the transfer of the property was made in good faith, and without actual intention to hinder or defraud any of the creditors.
We do not find it necessary to decide whether a trust was created in favor of the other creditors whose claims were assumed, by these persons who received the property, as a part of the consideration for its transfer. The case, in the feature we *390 have considered, is plainly distinguished from Bagaley v. Waters, 7 Ohio St., 360, and the doctrine of that case should not be extended.

Judgment reversed.